# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### May 2, 2001 Session

## STATE OF TENNESSEE v. WALTER LEE ALLEN

**Appeal from the Court of Criminal Appeals**
**Criminal Court for Jefferson County**
**No. 6259     Ben W. Hooper, II, Judge**

---

**No. E1998-00416-SC-R11-CD - Filed February 22, 2002**

---

The defendant, Walter Lee Allen, was indicted for aggravated robbery.  He was convicted of the lesser-included offense of robbery and received a ten-year sentence.  The Court of Criminal Appeals affirmed the conviction and sentence.  We granted permission to appeal to review two issues:  (1) whether a variance existed between the indictment alleging robbery "by violence" and the proof showing robbery by pointing a gun at the victim; and (2) whether the trial court erred by failing to instruct the jury on facilitation of robbery as a lesser-included offense.  We conclude that no variance existed because pointing a deadly weapon at the victim constitutes robbery "by violence."  We further conclude that the failure to instruct on facilitation of robbery was reversible error under the circumstances of this case.  Accordingly, we reverse the judgment of the Court of Criminal Appeals and remand the case for a new trial.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Court of Criminal Appeals Reversed; Case Remanded**

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY Anderson and WILLIAM M. BARKER, JJ., joined.  ADOLPHO A. BIRCH, JR., J., dissenting.

Edward C. Miller and Helen Susanne Bales, Dandridge, Tennessee, for the appellant, Walter Lee Allen.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Elizabeth T. Ryan, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and James L. Gass, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

On July 20, 1997, Kathy Shoun was working alone at the Fast-Stop Market in White Pine when Gary Haney entered the market.  Haney pointed a gun at Shoun, cocked it, and demanded that she give him money. As Shoun was handing the money to Haney, Allen entered the market and

stood silently in the doorway. Haney did not look back at Allen or seem concerned by his presence. Haney then ordered Shoun to give him her billfold and go to the back of the market. Allen displayed no weapon and said nothing during the robbery. Allen never left the doorway. Neither Haney nor Allen had any physical contact with Shoun. After the robbery, Haney and Allen fled together.

At trial, Allen's defense was mistaken identity or, in the alternative, lack of criminal responsibility for the conduct of Haney. The trial court instructed the jury on the charged offense of aggravated robbery and the lesser-included offense of robbery. The trial court also gave an instruction on the theory of criminal responsibility for the conduct of another.[1] Allen was convicted of robbery and received a ten-year sentence. The Court of Criminal Appeals affirmed the conviction and sentence. We granted permission to appeal.

## VARIANCE BETWEEN INDICTMENT AND PROOF

Robbery is defined as the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401. Aggravated robbery is accomplished when a deadly weapon is used or when the victim suffers serious bodily injury. Tenn. Code Ann. § 39-13-402. The indictment in this case alleged that Allen

> did unlawfully, feloniously, intentionally, and knowingly obtain
> property, to wit: U.S. monies, food stamps, and personal property
> from the person of Kathy Shoun, by violence and accomplished with
> a deadly weapon, to wit: a gun, with the intent to deprive said Kathy
> Shoun of the property and without her effective consent, in violation
> of T.C.A. § 39-13-402.

(Emphasis added.) Thus, the indictment alleged robbery "by violence" but did not allege robbery by the alternative means of "putting a person in fear." Allen asserts that the proof showed only robbery "by putting a person in fear." According to Allen, this omission created a material variance between the indictment and the proof.

Recently, in State v. Fitz, 19 S.W.3d 213 (Tenn. 2000), this Court analyzed the meaning of "violence" as used in the robbery statute. We stated:

> Because "violence" is not defined within the Code, we turn to
> other sources to determine its meaning. According to Black's Law
> Dictionary, "violence" is defined as: "[u]njust or unwarranted
> exercise of force . . . [p]hysical force unlawfully exercised; abuse of
> force . . . [t]he exertion of any physical force so as to injure, damage

---

[1]"A person is criminally responsible for an offense committed by the conduct of another if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2).

or abuse." Id. [(6th ed. 1990)] at 1570. Similarly, Webster's defines violence as "exertion of any physical force so as to injure or abuse." Webster's Third New International Dictionary of the English Language – Unabridged 2554 (1993).

Fitz, 19 S.W.3d at 216. We then held that the meaning of the violence element as used in the robbery statute is "physical force unlawfully exercised so as to damage, injure or abuse." 19 S.W.3d at 217. The element of violence was established by proof that "Fitz shoved the clerk with both hands in an 'aggressive manner,' knocking the clerk backward into a cigarette display." Id.

          In the present case, Allen's accomplice pointed a gun at the victim, cocked it, and demanded money. Pointing a deadly weapon at the victim is physical force directed toward the body of the victim. See Black's Law Dictionary at 1147 (defining "physical" as "[r]elating or pertaining to the body"). There is no question that such force is unlawfully exercised so as to abuse the victim. We reject the contention that pointing a gun at the victim does not constitute violence because there is no physical contact. This Court did not hold in Fitz that physical contact is the sole means of establishing violence. While physical contact may rise to the level of violence, physical contact is not required to prove violence. See Parker v. State, 478 So. 2d 823, 825 (Fla. Dist. Ct. App. 1985) (on motion for rehearing) (holding that neither physical contact nor victim injury is a necessary part of proving force or violence for a robbery conviction). Common sense dictates that even without physical contact a threat made with a pointed gun is more than just a threat–it is violence.

          Construing a similar statute, the Missouri Supreme Court held that "[t]he pointing of a dangerous and deadly pistol at a robbery victim constitutes 'violence to his person.'" State v. Neal, 416 S.W.2d 120, 123 (Mo. 1967). Other jurisdictions have reached the conclusion that pointing a gun at the victim constitutes force, violence, or both. See Lewis v. State, 469 So. 2d 1291, 1298 (Ala. Crim. App. 1984), aff'd, 469 So. 2d 1301(Ala. 1985) (holding that, as a matter of law, brandishing weapon during robbery constituted both use of force and threat of force); People v. LeBlanc, 23 Cal.App.3d 902, 908-09 (holding that pointing pistol at robbery victim was both "force" and "fear"); State v. Gordon, 321 A.2d 352, 367 (Me. 1974) (holding that pointing firearm at victim was unquestionably use of "force and violence").

          As demonstrated by decisions from other jurisdictions, the elements of "violence" and "putting the person in fear" are not mutually exclusive. See Lewis and LeBlanc, supra. We recognized in Fitz that some conduct may constitute both violence and putting the victim in fear. 19 S.W.3d at 215. Pointing a gun at a victim meets both definitions. This construction of the term "violence" does not render meaningless the concept of "putting the person in fear." There remain purely verbal threats and conduct not rising to the level of violence that would place a person in fear. Similarly, conduct that is unperceived by a victim, such as striking a victim from behind to render that victim unconscious, would constitute "violence" but may be insufficient to place that person in fear.

We conclude that pointing a deadly weapon at the victim constitutes "violence" as used in the offense of robbery pursuant to Tenn. Code Ann. § 39-13-401. Because the proof in this case demonstrated robbery "by violence," we hold that no variance existed between the proof and the indictment alleging robbery "by violence." Accordingly, Allen is not entitled to relief on this issue.

## FAILURE TO GIVE LESSER-INCLUDED OFFENSE INSTRUCTION

Allen asserts that the trial court erred by failing to instruct the jury on facilitation of robbery. In applying the lesser-included offense doctrine, three questions arise: (1) whether an offense is a lesser-included offense; (2) whether the evidence supports a lesser-included offense instruction; and (3) whether an instructional error is harmless.

### A. Lesser-Included Offense

We must first determine whether facilitation of robbery is a lesser-included offense of the charged offense of aggravated robbery. Under the test adopted in State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999), an offense is a lesser-included offense if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>
>> (1) a different mental state indicating a lesser kind of culpability; and/or
>>
>> (2) a less serious harm or risk of harm to the same person, property or public interest; or
>
> (c) it consists of
>
>> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>>
>> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>>
>> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Robbery is a lesser-included offense under part (a) of this test because all of its statutory elements are included within the statutory elements of the charged offense of aggravated robbery. Facilitation of robbery is therefore a lesser-included offense under part (c)(1) because it is facilitation of an offense that otherwise meets the definition of a lesser-included offense in part (a).

### B. Evidence Supporting Lesser-Included Offense Instruction

Having concluded that facilitation of robbery is a lesser-included offense, we next consider whether the evidence justified an instruction on that offense. In <u>Burns</u>, we adopted the following two-step analysis for determining whether a lesser-included offense instruction should be given:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

6 S.W.3d at 469. Error in omitting a lesser-included offense instruction is not negated merely because the evidence also is sufficient to convict on the greater offense. <u>State v. Bowles</u>, 52 S.W.3d 69, 75 (Tenn. 2001). A defendant need not demonstrate a basis for acquittal on the greater offense to be entitled to an instruction on the lesser offense. <u>Id</u>. The trial court must provide an instruction on a lesser-included offense supported by the evidence even if such instruction is not consistent with the theory of the State or of the defense. The evidence, not the theories of the parties, controls whether an instruction is required.

The Court of Criminal Appeals concluded that Allen was not entitled to an instruction on facilitation of robbery because there was no dispute that a deadly weapon was used in the robbery. In other words, the Court of Criminal Appeals held that the trial court's failure to instruct on facilitation of robbery was not error because evidence of the use of a deadly weapon–the element distinguishing aggravated robbery from robbery in this case–was uncontroverted. To properly address this issue, parts (a) and (c) of the <u>Burns</u> test must be analyzed.

As previously established, robbery is a lesser-included offense of the charged offense of aggravated robbery under part (a) of the <u>Burns</u> test. As a general rule, evidence sufficient to warrant an instruction on the greater offense also will support an instruction on a lesser offense under part (a) of the <u>Burns</u> test. In proving the greater offense the State necessarily has proven the lesser offense because all of the statutory elements of the lesser offense are included in the greater. <u>See</u> <u>Bowles</u>, 52 S.W.3d at 80.

Application of the general rule does not conflict with the first step of the two-step <u>Burns</u> analysis requiring a court to determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. We did not hold in <u>Burns</u> that a lesser-included offense instruction is required when reasonable minds could accept that *only* the lesser offense occurred. Reasonable minds may accept the same evidence as supporting the existence of both the greater offense and the lesser offense. The same evidence also may be legally sufficient to support a conviction for either the greater offense or the lesser offense. Consequently, the <u>Burns</u> analysis does not preclude finding that the same evidence supports an instruction on both the greater offense and the lesser offense.

The general rule for lesser offenses under part (a) of the <u>Burns</u> test does not extend to lesser offenses under part (c) of the test. Part (c) of the test expressly designates facilitation, attempt, and solicitation as lesser offenses. For lesser offenses under part (c), proof of the greater offense will not necessarily prove the lesser offense.

Facilitation is established by proof that "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403. The proof in this case showed that Allen stood silently in the doorway of the market as his accomplice robbed the clerk at gunpoint. Allen displayed no weapon and took no property from the victim. There was no evidence that he received any proceeds of the robbery. The jury could have reasonably concluded that Allen did not share the intent of his accomplice even though he knowingly furnished substantial assistance by blocking the door. Furthermore, consistent with the general rule, the proof of aggravated robbery in this case necessarily proved robbery. Therefore, evidence existed that reasonable minds could accept as to the offense of facilitation of robbery.[2]

We reject the proposition that no reasonable mind could accept the existence of the offense of facilitation of robbery because evidence of the use of a deadly weapon was uncontroverted. In this case, the use of a deadly weapon is an element of the charged offense of aggravated robbery. The *absence*, however, of a deadly weapon is not an element of facilitation of robbery. The jury is not required to believe any evidence offered by the State. <u>See</u> Tenn. Const. art. I, § 19 (stating that "the jury shall have a right to determine the law and the facts"). In fact the jury in this case rejected the proof of the use of a deadly weapon in convicting the defendant of robbery rather than the charged offense of aggravated robbery. We therefore cannot agree that the decision to convict on

---

[2]The dissenting opinion concludes that the evidence does not support an instruction on facilitation. The dissent reasons that Allen's presence at the scene makes it "illogical" to hold that Allen's intent could have been less than that required under the criminal responsibility statute. Absence from the scene, however, is not an element of facilitation. We reiterate that the evidence must be viewed "liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence." <u>Burns</u>, 6 S.W.3d at 469. The same evidence may support instructions on both criminal responsibility and facilitation. A defendant need not demonstrate a basis for acquittal as a principal offender to be entitled to an instruction on facilitation. <u>See</u> <u>Bowles</u>, 52 S.W.3d at 75.

a lesser-included offense may be taken away from the jury whenever proof supporting the element distinguishing the greater offense from the lesser offense is uncontroverted. As we stated in Burns, "[t]he jury, not the judge, performs the function of fact-finder." 6 S.W.3d at 472.

We conclude that evidence existed in this case that reasonable minds could accept as to the offense of facilitation of robbery. Furthermore, the evidence was legally sufficient to support a conviction for facilitation of robbery. Accordingly, we hold that the trial court erred by failing to instruct the jury on facilitation of robbery.

## C. Harmless Error

Having concluded that the trial court erred by failing to instruct the jury on facilitation of robbery, our final inquiry is whether that error is harmless beyond a reasonable doubt. State v. Ely, 48 S.W.3d 710, 727 (Tenn. 2001). An erroneous failure to give a lesser-included offense instruction will result in reversal unless a reviewing court concludes beyond a reasonable doubt that the error did not affect the outcome of the trial. Bowles, 52 S.W.3d at 77. The error may be harmless when the jury, by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, necessarily rejected all other lesser-included offenses. State v. Williams, 977 S.W.2d 101, 106 (Tenn. 1998). In the present case, the jury convicted Allen of robbery, the only lesser-included offense instructed. Therefore, unlike Williams, the jury in this case did not reject an intermediate offense. We have never held, however, that a failure to instruct on a lesser-included offense can be harmless beyond a reasonable doubt only when an intermediate offense is rejected.

The improper omission of a lesser-included offense is analogous to the improper omission of an element of an offense. Omitting an instruction on a lesser-included offense denies the jury the option of rejecting a greater offense in favor of a lesser offense. The omission precludes the jury from finding that the element distinguishing the greater offense from the lesser offense was not proven beyond a reasonable doubt and that the defendant is therefore guilty of the lesser offense.[3]

Citing Neder v. United States, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999), we have concluded that the failure to instruct on an essential element of an offense was harmless beyond a reasonable doubt when the omitted element was uncontested and supported by overwhelming and uncontroverted evidence. See State v. Ducker, 27 S.W.3d 889, 899-900 (Tenn. 2000); see also State v. Garrison, 40 S.W.3d 426, 435 (Tenn. 2000) (holding error harmless when omitted element "was not contested at trial and essentially has been conceded"). In Neder, the United States Supreme Court held that "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." 527 U.S. at 17, 119 S. Ct. at 1837. The dissenting justices argued that harmless error should be limited

---

[3]If the lesser offense is not instructed, then the jury would be required to acquit the defendant upon finding that the element in the greater offense was not proven beyond a reasonable doubt. Accordingly, a lesser-included offense instruction may benefit the State as much as the defendant.

to cases "[w]here the facts *necessarily found* by the jury (and not those merely discerned by the appellate court) support the existence of the element omitted or misdescribed." 527 U.S. at 35, 119 S. Ct. at 1846. The majority rejected this restrictive approach as inconsistent with settled precedent, reasoning that "a constitutional error is either structural or it is not." 527 U.S. at 14, 119 S. Ct. at 1836. If a constitutional error is not structural, then it is subject to harmless error analysis, and the proper test is "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" 527 U.S. at 15, 119 S. Ct. at 1837 (quoting Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)).

Improperly omitting a lesser-included offense instruction is a constitutional error of the same type and magnitude as improperly omitting an element. When the jury's verdict "necessarily included a finding" on the omitted element, the error may be harmless. Neder, 527 U.S. at 26, 119 S. Ct. at 1842 (Stevens, J., concurring on the basis of this finding). However, as made clear in the majority opinion in Neder, harmless error is not limited to cases in which the verdict *necessarily* included a finding on the omitted element. Constitutional harmless error analysis does not require harmlessness to be necessarily demonstrated by the jury's verdict. The same reasoning applies to the improper omission of a lesser-included offense. The error may be harmless when the jury "necessarily rejected" all the lesser-included offenses by rejecting an intermediate offense. Williams, 977 S.W.2d at 106. This analysis does not, however, limit harmless error to cases in which the jury necessarily rejected all other lesser-included offenses.

As we recognized in Ducker, application of constitutional harmless error analysis in a failure-to-instruct case strikes an appropriate balance between the interests of society and the defendant:

> We believe that where an omitted element is supported by uncontroverted evidence, this approach reaches an appropriate balance between "society's interest in punishing the guilty [and] the method by which decisions of guilt are made." . . . In a case such as this one, where a defendant did not, and apparently could not, bring forth facts contesting the omitted element, answering the question whether [the] jury verdict would have been the same absent the error does not fundamentally undermine the purposes of the jury trial guarantee.
>
> Of course, safeguarding the jury guarantee will often require that a reviewing court conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error – for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding – it should not find the error harmless.

A reviewing court making this harmless error inquiry does not, as Justice Traynor put it, "become in effect a second jury to determine whether the defendant is guilty." Rather, a court in typical appellate-court fashion asks whether [the] record contains evidence that could rationally lead to a contrary finding with respect to the omitted element. If the answer to that question is "no," holding the error harmless does not "reflect a denigration of the constitutional rights involved." On the contrary, it "serve[s] a very useful purpose insofar as [it] block[s] setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial."

27 S.W.3d at 899 (quoting Neder, 527 U.S. at 18-19, 119 S. Ct. at 1838-39 (citations omitted)).

When a lesser-included offense instruction is improperly omitted, we conclude that the harmless error inquiry is the same as for other constitutional errors: whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial. See Bowles, 52 S.W.3d at 77. In making this determination, a reviewing court should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury. A reviewing court may find the error harmless because the jury, by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, necessarily rejected all other lesser-included offenses. Williams, 977 S.W.2d at 106. Harmless error is not limited, however, to such cases.

With these principles in mind, we now address whether the failure to instruct on facilitation of robbery as a lesser-included offense of aggravated robbery was harmless error under the circumstances of this case. Aggravated robbery and facilitation of robbery differ in the intent of the defendant and the use of a deadly weapon. The theory of defense was mistaken identity or, in the alternative, lack of criminal responsibility for the conduct of the gunman. Thus, the issue of Allen's intent was contested. Evidence that Allen shared the intent of his accomplice was controverted and not overwhelming. In a similar case, we held that the failure to instruct on facilitation of especially aggravated robbery and facilitation of aggravated robbery was reversible error. See State v. Flemming, 19 S.W.3d 195, 200 (Tenn. 2000). Flemming did not address, however, the failure to instruct on facilitation of robbery. In this case, the jury rejected the charged offense of aggravated robbery even though there was uncontroverted and overwhelming evidence of the use of a deadly weapon. In light of the verdict convicting Allen of robbery and the controverted evidence of Allen's intent, we are unable to conclude beyond a reasonable doubt that the jury, if given the opportunity, would not have convicted Allen of facilitation of robbery. Because we are unable to conclude beyond a reasonable doubt that the omission of an instruction on facilitation of robbery did not affect the outcome of the trial, we must hold that the error was not harmless.

## CONCLUSION

We conclude that pointing a deadly weapon at the victim constitutes "violence" as used in the offense of robbery pursuant to Tenn. Code Ann. § 39-13-401. Accordingly, we hold that no variance existed between the indictment alleging robbery "by violence" and the proof showing robbery by pointing a gun at the victim. We further conclude that the trial court erred by failing to instruct on facilitation of robbery as a lesser-included offense and that the error was not harmless beyond a reasonable doubt under the circumstances of this case. Accordingly, we reverse Allen's conviction and remand the case for a new trial. Costs of the appeal are taxed to the State of Tennessee.

_____
JANICE M. HOLDER, JUSTICE