IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 1, 2005

## STATE OF TENNESSEE v. WILLIAM BELCHIA

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-02058     James C. Beasley, Jr., Judge**

---

**No. W2004-01168-CCA-R3-CD  - Filed March 30, 2005**

---

The defendant, William Belchia, was convicted by a Shelby County Criminal Court jury of theft of property over $1000 but less than $10,000, a Class D felony, for failing to return a rental car. He was sentenced as a career offender to twelve years in the Department of Correction. In a timely appeal to this court, he argues that the State failed to prove beyond a reasonable doubt that he intended to deprive the rental car company of its property and that the trial court erred by not instructing the jury on the temporary taking of a vehicle, Tenn. Code Ann. § 55-5-104, as a lesser-included offense of theft of property. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Robert Wilson Jones, Shelby County Public Defender, and Robert H. Gowen, Assistant Public Defender, for the appellant, William Belchia.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; William L. Gibbons, District Attorney General; and Theresa McCusker, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On August 9, 2002, the defendant rented a 2003 Oldsmobile Alero from Alamo National Car Rental on Rental Road in Memphis. The rental agreement provided that the car was to be returned on August 12, 2002. In addition, it contained the following provision, printed in larger letters than the rest of the contract and initialed by the defendant:

If I violate the rental agreement by failing to return the car by 12Aug02 18:08, I understand that I will be assessed an overstay fee of $10.99 per day in addition to my other charges and understand that the rental car may be reported as stolen to the police and I will be subject to arrest and criminal prosecution.

The defendant failed to either return the car or contact Alamo to request an extension on his rental agreement. Therefore, on September 12, 2002, an Alamo representative reported the vehicle stolen to the Memphis Police Department. The following day, a Memphis police officer responding to an unrelated complaint involving the defendant at a Family Dollar store discovered that the vehicle the defendant had in his possession matched the description of the stolen vehicle. As a result, the defendant was arrested and charged with two counts of theft of property over $10,000 but less than $60,000, with the first count of the indictment charging him with unlawfully and knowingly obtaining the vehicle from Alamo and the second count charging him with unlawfully and knowingly exercising control of the vehicle.[1]

The State's first witness at trial was James T. Campbell, an administrative clerk at the Memphis Alamo National Car Rental store from which the defendant had rented the vehicle. Campbell testified that the company's records reflected that the defendant rented a red, four-door 2003 Oldsmobile Alero, valued at $16,000, on August 9, 2002, with a return date of August 12, 2002.[2] Campbell identified the rental agreement, signed and initialed by the defendant, and testified that he filed an affidavit with the police department on September 12, 2002, reporting the vehicle as stolen, after a month had elapsed from the rental return date without the defendant's having returned the vehicle, notified the company in any fashion, or responded to the company's efforts to contact him.

Campbell said that Alamo's efforts to contact the defendant would have included telephone calls, but he had not personally attempted the calls and had not brought any records with him reflecting that the calls had been made. He said, however, that he had a copy of a letter dated August 15, 2002, which Alamo had sent to the defendant informing him that his rental unit was overdue. Although the letter was sent by certified mail, he did not have a copy of the return receipt in his records.

Campbell acknowledged that the defendant rented the car in his own name, charging the rental fee of $178.51 to a valid Visa card, which was also in his own name. He further acknowledged that immediately below the rental provision stating that an unreturned car could be reported stolen was the following language: "I understand that if I do not return the car as specified above, I will be charged retroactively for the entire length of the rental: Daily: 67.99 Weekly: 289.99

---

[1] A third count of the indictment, which charged the defendant with theft of property under $500 from a Family Dollar Store, was severed prior to the trial in the instant case.

[2] Since the defendant contests neither that he rented the car on August 9, nor that the same vehicle was found in his possession on September 13, we have omitted as unnecessary those portions of the trial testimony by which the State established the identity of the defendant and the identification of the vehicle.

Extra Day: 67.99 Hourly: 22.66; plus any optional products purchased above." He disagreed, however, that a customer could automatically extend the rental period under those payment terms by merely keeping the vehicle without contacting the company to obtain its permission. He testified the company's standard practice was to report a vehicle as stolen when thirty days had elapsed from the contract return date and that the charges for the rental, including the late fees, terminated on that date. He stated that Alamo placed a "forced charge" of $2,840.19 on the defendant's credit card on September 13, 2002, which meant that the charge had been attempted but no funds were available on the defendant's credit card to pay it. Campbell testified that, to his knowledge, those rental fees and late charges remained uncollected.

Memphis Police Officer Anita Bennett testified she responded on September 13, 2002, to a call at the Family Dollar Store in the Southgate Shopping Center, where she came in contact with the defendant. She said the defendant identified a maroon Oldsmobile Alero with a "busted" left rear vent window as his rental car. After running the vehicle's tag number, she learned that it was stolen and arrested the defendant.

The defendant elected not to testify and rested his case without presenting any proof.

The jury acquitted the defendant of count one of the indictment and convicted him in count two of the lesser-included offense of theft of property over $1000 but less than $10,000, for which the trial court subsequently sentenced him as a career offender to twelve years in the Department of Correction.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant first challenges the sufficiency of the convicting evidence. Specifically, he contends that the State failed to prove beyond a reasonable doubt he had the requisite intent to deprive Alamo of its property. Citing, among other things, his rental of the car in his own name with his own credit card, the contract language providing for additional fees to be assessed should the vehicle be kept beyond the return date, and his statement to the police officer that he had rented the vehicle, the defendant asserts that he merely "opted to extend the contract according to its terms." The State responds that the length of time the defendant kept the vehicle beyond the return date without contacting the company or making any efforts to pay on the account, combined with the damaged state of the vehicle when recovered, was sufficient for the jury reasonably to infer that the defendant intended to deprive Alamo of the vehicle. We agree with the State.

A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Thus, when the sufficiency of the convicting evidence is challenged on appeal, we must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any*

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

"Theft of property" occurs when, "with intent to deprive the owner of property, [a] person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (2003). "Deprive" means, among other things, to "[w]ithhold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner." Id. § 39-11-106(a)(8)(A). When the value of the goods or services taken is $1000 or more but less than $10,000, theft of property constitutes a Class D felony offense. Id. § 39-14-105(3).

Viewed in the light most favorable to the State, the proof at trial established that the defendant kept the vehicle for thirty days beyond the date he knew it was due to be returned, and beyond the length of time he had paid for its rental, without contacting the company to request an extension on the contract, to explain his failure to return the vehicle, or to arrange for payment for his continued use of the vehicle. The defendant also failed to respond to the letter the company sent to the address he had provided or to the telephone calls that Campbell was certain, given the company's practices, "would have been made prior to . . . reporting the unit stolen." Furthermore, when the vehicle was ultimately recovered, it was still in the defendant's possession and one of its rear vent windows was broken out. Finally, the credit card the defendant presented at the time he rented the vehicle lacked sufficient funds to cover the additional charges assessed for the extended period he had the vehicle in his possession. These facts, taken together, were more than sufficient for the jury to infer that the defendant had no intention of returning the vehicle or paying for its continued use and, thus, that his exercise of control of the vehicle occurred with the intent to deprive the rental car company of its property. See, e.g., State v. Tammy Annette Burruss, No. M2002-01261-CCA-R3-CD, 2003 WL 21516211, at *3 (Tenn. Crim. App. July 2, 2003), perm. to appeal denied (Tenn. Dec. 1, 2003) (affirming theft conviction based on evidence that defendant kept rental car twenty-seven days beyond return date, failed to contact rental company or respond to its efforts to contact her, and attempted to avoid police officer who discovered car in her possession). We conclude, therefore, that the evidence was sufficient to prove the defendant guilty of theft of property over $1000 beyond a reasonable doubt.

## II.  Jury Instruction on Lesser-Included Offense

As his second issue, the defendant contends that the trial court committed reversible error by not instructing the jury on the temporary taking of a vehicle, Tennessee Code Annotated section 55-5-104, as a lesser-included offense of theft of property under Tennessee Code Annotated section 39-14-103.  Providing only minimal argument in support, the defendant asserts that the temporary taking of a vehicle is a lesser-included offense of the indicted offenses under either part (a) or part (b) of the Burns test, and that there was sufficient evidence presented at trial to support a conviction on the temporary taking of a vehicle as a lesser-included offense.   The State argues that the trial court correctly concluded that the requested offense did not qualify as a lesser-included offense of theft of property under Burns and that, even if it did, there was insufficient evidence to support the issuance of a jury instruction on the offense.  Once again, we agree with the State.

When an issue is raised regarding the trial court's failure to instruct on a lesser-included offense, we must determine: (1) whether the offense is a lesser-included offense under the test adopted in State v. Burns, 6 S.W.3d 453 (Tenn. 1999); (2) whether the evidence supports an instruction on the lesser-included offense; and (3) whether the failure to instruct on the lesser-included offense constitutes harmless error.  State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002).  Under Burns, an offense is lesser-included if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>
>> (1) a different mental state indicating a lesser kind of culpability; and/or
>>
>> (2) a less serious harm or risk of harm to the same person, property or public interest; or
>
> (c) it consists of
>
>> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>>
>> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>>
>> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

<u>Burns</u>, 6 S.W.3d at 466-67.

Tennessee Code Annotated section 55-5-104 (2004) is entitled, "Temporary taking of vehicle – Joyriding – Obtaining possession fraudulently – Neglect to return – Class E felony." It is not clear from the record which subsection of the statute the defendant relied on in his request for a lesser-included instruction. Presumably, however, it was subsection (c), which provides:

> Any person who, after hiring, leasing or renting a motor vehicle under an agreement in writing, which provides for return of such vehicle to a particular place, or at a particular time, shall abandon such vehicle, or refuse or willfully neglect to return such vehicle to the place and at the time specified in the agreement, or who secretes, converts, sells or attempts to sell such motor vehicle, or any part thereof, commits a Class E felony.

Tenn. Code Ann. § 55-5-104(c) (2004). Thus, to support a conviction under this subsection it must be shown (1) that the defendant hired, leased, or rented a motor vehicle under a written agreement providing for the vehicle's return at a particular place or time; and (2) (a) that the defendant abandoned the vehicle; or (b) that the defendant refused or willingly neglected to return the vehicle to the place and at the time specified in the agreement; or (c) that the defendant secreted, converted, sold, or attempted to sell the vehicle or any part of the vehicle. The elements of theft of property, on the other hand, are: (1) that the defendant knowingly obtained or exercised control over the victim's property; (2) that the defendant did not have the owner's effective consent; and (3) that the defendant intended to deprive the owner of the property. Tenn. Code Ann. § 39-14-103. As noted by the trial court, the offense of temporary taking of a vehicle under section 55-5-104 contains many different elements from the offense of theft of property under section 39-14-103. Furthermore, it does not consist of the facilitation, criminal attempt, or solicitation of the offense of theft of property or of one of its recognized lesser-included offenses. Therefore, Tennessee Code Annotated section 55-5-104 does not meet the test for a lesser-included offense of theft of property under part (a), (b), or (c) of the <u>Burns</u> test.

The defendant cites <u>State v. Brooks</u>, 909 S.W.2d 854 (Tenn Crim. App. 1995), as an analogous case in support of his position that Tennessee Code Annotated section 55-5-104 is a lesser-included offense of theft of property. The defendant in <u>Brooks</u> was convicted of numerous offenses, including theft of property over $10,000, based on an episode in which he took a truck that belonged to an acquaintance without her permission and then led police in a high speed chase in the vehicle. <u>Id.</u> at 856-57. On appeal, this court reversed the theft over $10,000 conviction as plain error, finding that under the facts presented in the case, the trial court had a duty to instruct the jury on "joyriding," pursuant to Tennessee Code Annotated section 39-14-106, as a lesser-included offense. <u>Id.</u> at 860.

The joyriding statute at issue in <u>Brooks</u> provides that "[a] person commits a Class A misdemeanor who takes another's automobile, . . . or other vehicle without the consent of the owner and the person does not have the intent to deprive the owner thereof." Tenn. Code Ann. § 39-14-106

(2003). The State concedes that "joyriding" under Tennessee Code Annotated section 39-14-106 may be a lesser-included offense of the theft of an automobile in appropriate cases, but argues, among other things, that the defendant offered no evidence that would warrant an instruction on that offense. We agree.

> The instant case is easily distinguishable from <u>Brooks</u> on its facts. In <u>Brooks</u>, we noted that the facts that the defendant knew the victim, that the victim left the defendant in the truck with the keys and that the defendant was seen with the truck within a relatively short period of time after it was missing could easily lend themselves to a conclusion that the defendant took and used the truck without intending to deprive the owner as contemplated to be necessary for theft under the legislative definition of "deprive."

909 S.W.2d at 861. Here, by contrast, there was no evidence to support a conclusion that the defendant, having kept the vehicle for a full thirty days beyond the date it was due to be returned, ever intended to return the vehicle to its owner or that he lacked the necessary intent to deprive the owner of its property. We conclude, therefore, that the trial court did not err by not instructing the jury on the temporary taking of a vehicle pursuant to section 55-5-104, or on joyriding pursuant to section 39-14-106, as lesser-included offenses of the indicted offenses in this case.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE