IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 12, 2005

## BENJAMIN HERNANDEZ v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Putnam County**
**No. 97-0174     Leon Burns, Judge**

_____

**No. M2004-01798-CCA-R3-PC - Filed June 28, 2005**

_____

The petitioner appeals the denial of his petition for post-conviction relief, challenging: (1) the jury instruction given on the *mens rea* term "knowingly," and (2) the trial court's failure to instruct on the lesser included offenses of aggravated assault and assault. Upon review, we conclude that the issues are waived for failure to provide a completed record on appeal. Furthermore, notwithstanding waiver, the errors were harmless beyond a reasonable doubt. Therefore, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Jonathan L. Young, Cookeville, Tennessee, for the appellant, Benjamin Hernandez.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; William Edward Gibson, District Attorney General; and Benjamin W. Fann, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Facts and Procedural History

The petitioner, Benjamin Hernandez, was indicted on one count of premeditated first degree murder. On September 4, 1998, the petitioner was convicted of the lesser included offense of second degree murder. Thereafter, he was sentenced by the trial court to twenty-five years in the Department of Correction. This court affirmed the conviction on direct appeal. See State v. Benjamin Hernandez, III, No. M2000-00225-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 913 (Tenn. Crim. App., at Nashville, Nov. 21, 2001). On July 29, 2002, the petitioner filed a *pro se* petition for post-conviction relief. Subsequently, the post-conviction court appointed counsel, and an amended petition was filed alleging an improper jury instruction, various instances of ineffective

assistance of counsel, and prosecutorial misconduct. The petition was heard by the post-conviction court on June 28, 2004, and was denied by written order on July 2, 2004. The petitioner now timely appeals to this court, presenting two issues for our review:

1) that the trial court erred in failing to issue, or in the alternative, that trial counsel was incompetent in failing to secure the proper instruction on the definitions of "intentionally" and "knowingly"; and

2) that the trial court erred in failing to issue, or in the alternative, that trial counsel was incompetent in failing to secure jury instructions on the lesser included offenses of aggravated assault and assault.

Upon thorough review, we conclude that the trial court properly dismissed the post-conviction petition; therefore, we affirm.

The facts supporting the petitioner's conviction were summarized in this court's direct appeal opinion. See Hernandez, 2001 Tenn. Crim. App. LEXIS 913. On December 31, 1996, the petitioner, Robert Leonard, and Leonard's girlfriend had attended a party until approximately 12:15 a.m., when they arrived at Leonard's house. Id. at *3. Approximately fifteen minutes later, the victim called the residence and Leonard's girlfriend scolded the victim for calling so late, as there was a sleeping child in the house. Id. However, the victim phoned again within three minutes and the petitioner answered, stated that the victim had "disrespected" him, and threatened the victim. Id. at *3-4. After hanging up the phone, the petitioner drove Robert Leonard, his brother Timothy Leonard, Robert Dishman, and Patricia Blackman to Nina Turner's residence, where the victim was located. Id. at *4.

Upon arriving, the petitioner, Robert Leonard, and Timothy Leonard approached the side door of the residence, while Dishman and Blackman remained in the vehicle. Id. The petitioner knocked on the door, and the victim opened it, holding a knife. Id. The victim and petitioner briefly exchanged words, and the petitioner fired between three and six shots at the victim, killing him. Id. at *4, 6. The trio then fled to the vehicle and drove to the petitioner's residence, where the petitioner hid the murder weapon in an air-conditioning duct. Id. at *4-5.

At trial, the jury was instructed on the indicted offense of premeditated first degree murder and the following lesser included offenses: second degree murder, voluntary manslaughter, reckless homicide, criminally negligent homicide, and misdemeanor reckless endangerment. Among the instructions given were the definitions of the *mens rea* terms "intentionally" and "knowingly." The petitioner was ultimately convicted of second degree murder.

Analysis

Instruction on the Definition of Knowingly[1]

The petitioner first contends that the trial court erred in failing to issue, or in the alternative that trial counsel was incompetent for failing to secure, the proper definition of the term "knowingly." Specifically, he contends that the instruction given defining "knowingly" entitles him to post-conviction relief because it contained both the nature-of-conduct and the result-of-conduct language. Relying principally on State v. Page, 81 S.W.3d 781 (Tenn. Crim. App. 2002), the petitioner avers that, because second degree murder is a result-of-conduct crime, the inclusion of the nature-of-conduct language amounts to constitutional error; is not harmless beyond a reasonable doubt; and merits a new trial.

However, subsequent to this court's decision in Page, our supreme court heard and decided Faulkner, which clarified and narrowed the holdings of Page. In Faulkner, the jury was instructed on the offense of first degree murder and returned a verdict of guilty on that charge. As in the present case, the defendant in Faulkner relied on Page and challenged the instruction given on the definition of "intentionally," as it included both result-of-conduct and nature-of-conduct language. The supreme court first noted, contrary to the decision in Page, that the erroneous instruction did not automatically trigger a constitutional harmless error analysis. In determining whether the instruction given at Faulkner's trial rose to the level of constitutional error, the court first looked to the instructions as a whole and held that:

> First degree premeditated murder requires not only that the killing be "intentional," but also that the defendant act with a "premeditated" mental state. See Tenn. Code Ann. § 39-13-202(a)(1) (1997).
> . . .
> As the trial court instructed, "the element of premeditation requires a previously formed intent to kill." See State v. West, 844 S.W.2d 144, 147 (Tenn. 1992). The instructions properly defined "intentionally" with regard to the result of the conduct. *The entire charge on first degree premeditated murder eliminated any risk of the jury applying the wrong definition.* We conclude, therefore, that the instructional error was not constitutional in nature.

Faulkner, 154 S.W.3d at 60 (emphasis added). The court went on to note that the error was harmless because there was "overwhelming" evidence that the defendant "intended the result of his conduct." Id. at 61.

---

[1] Although the petitioner advances the same argument with regard to the definition of "intentionally," we conclude that this issue is moot. Because the defendant was found guilty of second degree murder and implicitly acquitted of first degree murder, the trial court's instruction on the definition of "intentionally" does not require our analysis. See State v. Robert Faulkner, 154 S.W.3d 48 (Tenn. 2005) (holding that where the defendant was convicted of first degree premeditated murder, the trial court's erroneous definition of "knowingly," relating to second degree murder, was moot).

Turning to the case at hand, we first note that the two-part analysis employed in Faulkner is instructive and applicable in this instance. As in Faulkner, we are to determine whether or not the erroneous instruction given in the petitioner's case is constitutional error. As we have previously mentioned, the Faulkner court viewed the jury instructions in their entirety to determine whether a constitutional harmless error analysis was necessary. However, in the present case, the petitioner has failed to include the jury instructions in the record on appeal. Aside from impeding our analysis, the petitioner's failure to provide a complete record, as to an issue presented for review, results in waiver. Tenn. R. App. P. 24(b); see State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999).

Furthermore, notwithstanding waiver and even if the instruction merited constitutional error analysis, we conclude that it was harmless beyond a reasonable doubt. First, the petitioner's *mens rea* was not disputed at trial. Rather, the petitioner's defense at trial was that he was not the shooter. See Hernandez, 2001 Tenn. Crim. App. LEXIS 913, at *9-10. Moreover, the evidence reveals that the defendant threatened the victim prior to shooting him and that he fired multiple shots at the victim from close range. Id. at *3-7. Both Page and Faulkner indicate that such circumstances should lead us to the conclusion that the instruction was harmless beyond a reasonable doubt. See Faulkner, 154 S.W.3d at 60-61 (evidence was "overwhelming" that the defendant intended the results of his conduct when he made threats to kill the victim and inflicted multiple wounds on the victim; therefore, the instruction was harmless); Page, 81 S.W.3d at 789 ("If a victim is shot at point blank range with a twelve-gauge shotgun while asleep, and the defense is the defendant was not the shooter, then the erroneous instruction would likely be harmless. In such a situation, *mens rea* is not a disputed issue at trial."). Therefore, even if the issue were not waived by virtue of an incomplete record, the instruction was harmless beyond a reasonable doubt.

In the alternative, the petitioner argues that counsel was ineffective for failing to present this issue on direct appeal. However, because we have determined that the error was harmless beyond a reasonable doubt, we further conclude that it could not have prejudiced the petitioner, as is required by Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).

II. Failure to Instruct on Aggravated Assault and Assault

The petitioner also contends that the trial court erred in failing to issue, or alternatively that counsel was incompetent for failing to secure, jury instructions on the offenses of aggravated assault and assault. However, we again note that the petitioner has failed to include the subject jury instructions in the record on appeal. It is the duty of the accused to provide a record that conveys a fair, accurate, and complete account of what transpired with regard to the issues that form the basis of the appeal. Tenn. R. App. P. 24(b); see State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). The petitioner's failure to do so results in a waiver of the issue; however, notwithstanding the petitioner's omission, we will proceed to the merits of the contention.

Harmless error, relating to the failure to charge lesser included offenses, must be shown "beyond a reasonable doubt." State v. Ely, 48 S.W.3d 710, 727 (Tenn. 2001). The proper inquiry is "whether it appears beyond a reasonable doubt that the error did not affect the outcome of the

trial." State v. Allen, 69 S.W.3d 181, 191 (Tenn. 2002). In making the harmless error determination, this court must "conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." Id.

> In sum, when a reviewing court determines whether a lesser-included offense ought to be charged, the evidence clearly controls. If there is evidence sufficient to support a conviction for a lesser-included offense, we hold that a trial court must charge that offense. The determinative test being whether there is evidence sufficient such that a jury could convict on that lesser-included offense. If a jury could convict, no matter how improbable, it is error not to charge that lesser-included offense. However, in deciding whether it was harmless beyond a reasonable doubt not to charge a lesser-included offense, the reviewing court must determine whether a reasonable jury *would* have convicted the defendant of the lesser-included offense instead of the charged offense. In other words, the reviewing court must determine whether it appears beyond a reasonable doubt that the trial court's failure to instruct on the lesser-included offense did not affect the outcome of the trial.

State v. Richmond, 90 S.W.3d 648, 662 (Tenn. 2002) (citing Allen, 69 S.W.3d at 191).

The petitioner correctly states that a panel of this court has previously held that both aggravated assault and assault are lesser included offenses of first degree murder under the Burns test, part (a). See State v. Paul Graham Manning, No. M2002-00547-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 117 (Tenn. Crim. App., at Nashville, Feb. 14, 2003), perm. to appeal denied (Tenn. 2003); but see State v. John C. Walker, III., No. M2003-01732-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 702 (Tenn. Crim. App., at Nashville, Aug. 11, 2004) (holding that neither aggravated assault nor assault is a lesser included offense under Burns, part (a)), petition to rehear granted (on Blakely v. Washington, 124 S. Ct. 2531 (2004)) (Tenn. Crim. App. Sept. 24, 2004).

However, this does not conclude the analysis. As we have previously noted, the trial court's omission is subject to a harmless error review. See State v. Ely, 48 S.W.3d 710 (Tenn. 2001). Instructive on this point is our supreme court's holding in State v. Williams, 977 S.W.2d 101 (Tenn. 1998). In conducting an analysis similar to ours, the Williams court held that:

> by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense . . . the jury necessarily rejected all other lesser offenses, including voluntary manslaughter. Accordingly, the trial court's erroneous failure to charge voluntary manslaughter is harmless beyond a reasonable doubt because the jury's verdict of guilt on the greater offense of first degree murder and its disinclination to consider the lesser included offense of second degree murder clearly demonstrates that it certainly would not have returned a verdict on voluntary manslaughter.

As we have previously noted, the jury was instructed on the indicted charge of first degree murder, second degree murder, voluntary manslaughter, reckless homicide, criminally negligent homicide, and misdemeanor reckless endangerment. Upon deliberation, the jury returned a verdict of guilty on the charge of second degree murder. The jury's verdict on the charge of second degree

-5-

murder and its implicit rejection of the lesser offenses charged demonstrate that the jury would certainly not have returned a verdict of guilty on the offenses of aggravated assault or assault. Id. at 106. As such, the failure to instruct on those offenses was harmless beyond a reasonable doubt.

In the alternative, the petitioner argues that counsel was ineffective for failing to include this issue in the motion for new trial or for review on direct appeal. However, we reiterate that, because the error has been deemed harmless beyond a reasonable doubt, it could not have prejudiced the petitioner, as is required by Strickland.

Conclusion

The denial of post-conviction relief is affirmed.

 

 

 

_____
JOHN EVERETT WILLIAMS, JUDGE